**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2467-17T1

FRANK GATTO,

     Plaintiff-Respondent,

v.

JANETTE BRETON f/k/a
JANETTE GATTO,

     Defendant-Appellant.

_____

Argued February 6, 2019 - Decided August 5, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2133-12.

Eric S. Solotoff argued the cause for appellant (Fox Rothschild LLP, attorneys; Eric S. Solotoff, of counsel and on the briefs; Eliana T. Baer, on the briefs).

Bonnie C. Frost argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Bonnie C. Frost, of counsel and on the brief).

PER CURIAM

Defendant Janette Breton appeals from aspects of a post-judgment order entered by the Family Part on October 27, 2017, in favor of her ex-husband, plaintiff Frank Gatto, and the denial of her motion for reconsideration. Specifically, defendant appeals from provisions of the order reinstating a parenting coordinator, compelling therapy for the parties' son and permitting plaintiff to retain a custody evaluator in the absence of a finding of changed circumstances. Although we find the court acted well within its considerable discretion in reinstating the parent coordinator and ordering therapy for the parties' son, we reverse the order as to the custody evaluator in light of the court's express finding of no changed circumstances.

By way of background, the parties were divorced in 2011 after a brief marriage. They have one son, who is now fourteen and attends middle school in accordance with a long-standing IEP (individualized education program). In accordance with the parties' marital settlement agreement, they share joint legal and physical custody. The boy lives with plaintiff in Bergen County and spends every other weekend and alternating Wednesday evenings with defendant in Brooklyn.

Notwithstanding that the parties settled all aspects of their divorce, including custody, they have litigated practically non-stop since almost before

the ink was dry on the judgment. Five judges across two counties have decided over a dozen post-judgment motions, almost all involving disputes over custody and parenting time. Their relations are so acrimonious that parenting time pick-ups and drop-offs of their son are done at the police station.

Plaintiff complains that defendant has let her career take precedence over time with their son, and that he spends too much time alone with his Xbox. Defendant counters that plaintiff, who was unemployed for over five years after their divorce, and now manages properties for his father, barrages their son with dozens of texts and telephone calls each day, interfering with his schooling and time with his friends. Plaintiff contends defendant interferes with his daily cell phone contact with the boy. Homework seems to be a constant source of irritation, with plaintiff complaining it cuts into his time with his son and defendant complaining about defendant not making it a priority or cutting corners by accessing math answers online.

About a year before the order under review was entered, defendant filed a motion related to vacation scheduling, prompting a cross-motion by plaintiff to compel therapy for their son and transfer custody to plaintiff. Defendant responded by seeking appointment of a parenting coordinator. After briefing and oral argument, the judge hearing the matter appointed a parent coordinator,

3

finding the parties were "completely unable to . . . communicate with each other." The judge denied plaintiff's request for therapy, finding that despite the parties' animosity for one another, there was nothing in the record to suggest their son was having any difficulty. The judge also denied plaintiff's request to change custody or order a custody evaluation, finding plaintiff had not shown changed circumstances. The judge specifically rejected plaintiff's arguments that the boy's age and alleged statement that he would like to live with his father were sufficient in light of the ample proof that he was thriving under the current arrangement.

Although it was defendant who originally sought appointment of a parent coordinator, she unilaterally terminated her participation in the process eight months after the coordinator's appointment. Plaintiff alleged defendant was dissatisfied with the recommendation of the parent coordinator that the parties' son see a therapist. Defendant claimed the purpose of the parent coordinator, to resolve issues and thereby reduce resort to attorneys and motion practice, had not been realized. She claimed plaintiff's incessant pestering of the parent coordinator with matters of no consequence had already cost her $3000, had not reduced the involvement of the parties' lawyers, and prevented issues she cared about from being addressed.

A-2467-17T1

A new judge, the parties' fifth, heard plaintiff's motion to reinstate the parenting coordinator, compel therapy for their son and transfer custody of the boy to him, as well as defendant's cross-motion to suspend plaintiff's Wednesday night parenting time and other relief. The judge denied plaintiff's request to transfer custody, finding "no prima facie showing that it's [in] the best interests of this child and there hasn't been demonstration that there is a significant change in circumstances." The judge, however, continued:

> If you want to get a custody evaluation, I'll leave that up to you. I have a report sitting on my desk from a custody expert. So far, he's charged $92,000.
>
> Dad from your C.I.S., you say you have earned zero earnings — no, zero earnings, you have income which is a pass through, it's unearned income of $4,000 and change a month. Mom, you're not a millionaire. You want to get a custody evaluation, fine, I'd leave that up to you but I do not intend to change custody.

The judge immediately ordered the reinstatement of the parenting coordinator, ordering the parties to split equally the $3000 additional retainer. The court also admonished plaintiff to stop bombarding the parent coordinator with unnecessary electronic communications, warning that a "lack of good faith and a lack of fair dealings" in the parties' resort to the parent coordinator "will result in a shifting of the cost." The judge, however, refused to entertain

plaintiff's request to sanction defendant for "interference with the parent coordinator," finding nothing in defendant's conduct to warrant sanctions.

The judge determined "[t]he child is going to get a therapist . . . . a safe haven . . . . someone he can talk with without fear of any of the information" getting back to his parents. Although acknowledging another judge had denied plaintiff's prior request for counseling, the judge noted the parenting coordinator had recently recommended the boy see a therapist.

The judge denied both parties' fees. Among other relief addressed, the judge ordered plaintiff to ensure the boy's homework got done during his parenting time, and warned that if it continued to be a problem, "the parenting time will be changed."

Defendant moved for reconsideration as to the reinstatement of the parenting coordinator and therapy for the parties' son. She also requested that plaintiff be ordered to pay increased child support in accordance with the Child Support Guidelines. The judge denied defendant all relief.

Defendant appeals, reprising the arguments made to the trial court judge and requesting that in the event the decision is not reversed that the matter be remanded to a different judge. Our review of the record convinces us that only one of defendant's arguments, the absence of support for the custody evaluation,

6

is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We accord "great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). The decision to order defendant to reengage with the parent coordinator and to require the parties' son to go to therapy were both well within the court's reasonable exercise of its considerable discretion. See id. at 205 (noting appointment of a parenting coordinator in accord with the Supreme Court's directives "is designed to aid parents by providing a different forum to discuss parenting problems"); Boardman v. Boardman, 314 N.J. Super. 340, 349 (App. Div. 1998) (holding a counseling requirement well within a Family Part judge's reasonable discretion).

The record is replete with examples of the parties' animosity for one another and their utter inability to work together for the good of their son. The court was obviously sensitive to defendant's concerns that as the only working parent, she could not keep up with plaintiff's incessant entreaties to the parent coordinator. The court addressed those concerns by limiting the parties' contacts with the coordinator and warning both parties he would not hesitate to shift fees should either one abuse the process. As to therapy, although the prior judge

declined to order therapy for the boy, she was clear his situation would have to be monitored given the unceasing conflict between his parents. Since that time, the record demonstrates his grades had declined and the parent coordinator, who met with the boy, recommended he get counseling.

Allowing the parties to retain custody evaluators is a different matter. The law is well settled that a party seeking a change in custody must demonstrate changed circumstances warranting modification. See Bisbing v. Bisbing, 230 N.J. 309, 322 (2017). Following the Lepis[1] "two-step process," the movant must first demonstrate changed circumstances before being "entitled to discovery and an evidentiary hearing or trial." R.K. v. F.K., 437 N.J. Super. 58, 62 (App. Div. 2014).

Contrary to plaintiff's repeated assertion in his brief, the court did not find changed circumstances here. Indeed, the judge expressly found plaintiff had not established changed circumstances. Accordingly, plaintiff was not entitled to the appointment of a custody evaluator. See ibid.; Peregoy v. Peregoy, 358 N.J. Super. 179, 205 (App. Div. 2003) (not faulting the Family Part judge's discretionary decision to initiate a custody investigation based on party's prima facie case of changed circumstances, notwithstanding the panel's conclusion that

---

[1] Lepis v. Lepis, 83 N.J. 139 (1980).

the "prima facie case was suspect"). That the court did not order a custody evaluation but only determined to "leave that up to [the parties]" does not change the analysis.

A custody evaluation is, as the court acknowledged, a very expensive and intrusive investigation into all aspects of the parties' lives and the best interests of their children. See Fall & Romanowski, Child Custody, Protection & Support § 23:3-5(b) (2019) ("[a]s set out in the American Psychological Association's Guidelines for Child Custody Evaluations in Family Law Proceedings (2009) (APA Guidelines), available at www.apa.org/practice/guidelines, the purpose of a forensic custody evaluation is to assess the personality and cognitive functioning of the person being examined" to assist the court in a best interests determination). Thus ordering defendant to cooperate in a custody evaluation, as the October 20, 2017 order requires, is plainly permitting extensive discovery, which Lepis makes clear may only be ordered following a prima facie showing of changed circumstances. See Lepis, 83 N.J. at 157; see also Hand v. Hand, 391 N.J. Super. 102, 104 (App. Div. 2007). Because the court specifically found plaintiff had not established a prima facie showing of changed circumstances, we reverse the order permitting plaintiff to obtain a custody evaluation.

A-2467-17T1

The judge did not err in denying, without prejudice, defendant's request to modify child support on reconsideration as defendant did not raise the issue in the first instance. See Lahue v. Pio Costa, 263 N.J. Super. 575, 598 (App. Div. 1993). We see no reason to consider that the matter should be heard by a different judge on remand.

The order of October 20, 2017 and its reconsideration on January 10, 2018 are affirmed, with the exception of that provision of the October 20 order permitting the parties to secure custody/best interests evaluations, which is reversed.

Affirmed in part; reversed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION